new and the the second case on our docket is 23-50037 Woodby City of San Antonio To please the court, I'm Vanessa Connell for appellant Amanda Wood. Now we're here today on review of summary judgment and that's conducted a Now the standard has largely been established since 1986. Every few years the Supreme Court throws a new wrinkle in the fabric. Tolan versus Cotton from 2014 is a Supreme Court case which said and affirmed the reviewing court must view the facts evidence and circumstance in the light most favorable to the non-movement. The new wrinkle is the court must view the law in the light most favorable to the non-movement as well and that includes the qualified 1983 suits. Now today I'm going to talk about issue two in our opening brief which is the quantum of evidence we proffered which was substantial. 20 exhibits, two identical sets of exhibits, one against the city and one against the individual officers. I'm going to talk about the evidence the type of evidence how it's significant factually and legally and discuss the relevant case law which applies to that type of evidence and if I have time I'm going to into part of argument four which are the culpable Menil policies which officers Ortiz and Martinez adhere to in their arrests in search of Amanda Wood. Okay I want to ask you about the qualified immunity. How do you I didn't really see where you particularly address the difference between Martinez and Ortiz. It seemed to me that the bulk of what you're complaining about was police officer Ortiz. Martinez did the search but she was told to by Ortiz so what is it if we were just looking at her what did she do that is not qualified immunity? Well in her admissions and interrogatory responses she can see well she talks about their training. Their training is flawed because they don't understand for example the Terry Starr principle. Their Terry Starr principle is based upon subjective criteria in general manual procedure 502 section .09 B1 and B2 not objective criteria. My question isn't what does she know and is she a good officer that isn't your case. Your case has to show that she did something wrong to your client that doesn't meet the qualified immunity standard and all your discussion is about Ortiz doing all this stuff and Martinez goes and searches the car but she's told to by Ortiz. So what else did she do that you think was wrong and not subject to qualified immunity? Well your honor my client was arrested outside of her locked vehicle. She didn't have contraband on her person. Her vehicle was locked in on private property. Right and would know Arizona versus Gaines if the suspect no longer has access to their vehicle the rest of outside of it. It's unconstitutional in Collins versus Virginia. It's parked on private property. If you were told by your boss to go do something would would that be clearly established law that doing that is wrong? Well yes under Whitley versus Warden Supreme Court 1971 you only have what probable cause the original officer had. And in my further discussion I'm going to show they did not have they didn't even have a reasonable suspicion. I'm going to talk about their admissions. We proffered 20 exhibits. 18 of their exhibits originated of our exhibits originated from Diapolese. Admissions, interrogatories, body camera videos and their formal written policies. 18 of our exhibits were from Diapolese. One was from the planet, an affidavit and one was a certified copy of the dismissal of her criminal case. In their admissions they state we arrested Wood outside of her locked vehicle. She didn't have contraband on her person, no marijuana. She did not give us consent to search her vehicle. They identified the source of their call, the subject of the call, the torch man and no criminality was present. And they didn't leave. They still continued to search. They followed their warless arrest policies with Wood. They have a policy General Manual Procedure 502 section .05e. It allows them to arrest a suspect and not know what crime they committed. So they cuffed and stuffed her. Does the policy really say that? What does it actually say? It says. Would you please quote it? I'm pretty sure the policy doesn't say, hey officer you can arrest somebody even though you have no earthly crime. It does say that. Really? Does it actually say that? It says they don't have to know what offense the suspect committed. And Attorney Mark Ross confirmed that in admission interrogatory. It does say that. And that's all it says. It says you can. Yeah, when someone else sent them to do the arrest and they just don't know what it's for but that someone else does know? Well, that principle violates Beck v. Ohio. You can't cuff and stuff someone and retroactively come up with something. It violates Henry v. U.S. 1959. You can't retroactively provide probable cause. You can't arrest someone for possession of marijuana if they don't have marijuana in their possession. Well, the officer said he smelled it on her. Okay, well let me talk. Isn't that the same court in Johnson v. U.S. 1948 said you can't arrest someone for smelling like a substance. In that case, they were in a hotel room. Do you know how many cases we have in this circuit that find probable cause to search or even reasonable suspicion to search based on the smell of marijuana? Well, number one, Europeans are in conflict with the Supreme Court. They're wrong. There are a lot of them. I'm telling you they're wrong. They've been wrong since like 1948. Let me clarify for you, Judge. The cases you talk about primarily deal at the border where they're trying to come in from Mexico. Those are different parameters. We're talking about a routine. Your view is if an officer, let me just get this straight, an officer stops someone, the officer smells marijuana on their person and that gives you no, that doesn't even give you reasonable suspicion to do a Terry stop? Well, he arrested her. But it doesn't give you probable cause. Well, they didn't have a reasonable suspicion to be there. And I'm going to talk about that following. But State v. Steelman, Texas Court of Criminal Appeals 2002 addressed that issue. They went to a party, police went to a party. They arrested a man because he smelled like marijuana. They intruded into the house and arrested other young men. And the Texas Court of Criminal Appeals said you can't arrest someone for smelling like marijuana. It violates the Texas Court of Texas Code of Criminal Procedure, Article 14.01B, which is our warrantless arrest statute. It violates it. So no court, not the Texas Supreme Court, say you can arrest someone for smelling like marijuana. Why not? I mean, what if marijuana, what if it's illegal to possess marijuana and I smell like it? Why can't I arrest somebody? Let me give you a case on point. Payne v. State, Texas Court of Criminal Appeals 2011. That court said even a trained organic chemist with a PhD has trouble telling the difference between industrialized hemp, which is legal, and marijuana. They would have to do a chemical analysis to determine the THC. I mean, probable cause isn't 99.99%. You don't have to have a chemist going around with in Hayter v. City of Mount Vernon, Texas, 1998, that there are many substances which replicate marijuana. They were talking, you were talking about Indokine in that case. That's your own opinion. Some artificial and some organic that represent marijuana. Industrialized hemp and marijuana are virtually indistinguishable. The only thing that distinguishes them is the THC But isn't your better argument that she said she didn't smoke any marijuana and she didn't smell of marijuana and he just made that up after he was mad at her? I mean, because he made this comment about, oh, okay, you know, when she said something to him, you know, he made some nasty comment and started to handcuff her. And so it's afterwards that he said this thing about marijuana. And so if there's a fact issue, then you don't get summary judgment. Isn't that your argument? That is one of the things we argue. Okay. Because if she really was sitting around with a bunch of marijuana, that is a different case than the one that you've argued here. Well, at 2117, my client says, I resent being called a criminal. I'm going to get a copy of your police report. And that sets Ortiz off. Oh, you want to do it that way? Okay. Uh-huh. Hey, come here. You smell like marijuana. Turn around. They cuff and stuff her. And immediately at 30 feet 12, he tells Lozano, we arrested her for giving us a hard time. And that's before any alleged marijuana is found. Because 15 seconds later, Martina says, oh, I think I found a little roach at 3327. The problem with that is under Texas law, that's not a prosecutable amount. That's not a usable amount under Moore v. State, Texas Court of Criminal Appeals 1978. And all of these are in our opening repliary. The authority is against you. It's at your position. If Ortiz was a blood man, they say, you smell like marijuana. Your client says, no, no, they're just mad at me because I said, I'm going to get a copy of your police report. They searched the car. They find a burned roach. But they had already arrested her, judge. You've got to find a compliment first. The statute is possession. If I smell like marijuana, I'm outside a car. You smell like marijuana. So I got probable cause to search your car. I find some burned marijuana. What's wrong with that? The problem is you can't arrest someone for smelling like. Well, what if they smell like daffodils? What if they smell like big red soda pop? Daffodils are not a controlled substance. You can't. The Supreme Court said you can't arrest someone for smelling like a substance. OK, you end up smelling like marijuana if you walk by someone who is smoking marijuana, even though you weren't. Well, that's possible, too. Well, let me tell you, that's subjective. It's possible that space aliens planted marijuana in her car, but we're talking about probable cause. We're just talking about probable cause. There's no probable cause. I just told you to arrest her. They didn't have problem. They didn't have a reasonable suspicion for a Terry stop. Number one, the caller said there's a man with a torch. That's not unlawful. Number two, the caller didn't give a location that violates. What brought the cops to the what? It was in the middle of the night. The man is willing. He was welding. He's willing on his own gate. And look, the cops know that there was a report that someone who's welding. Yes, the cops knew that. And Officer Ortiz grew up with a welder, Henry Lozano. He knew that was him on his own property. And he says so at thirty four twenty eight. And Lozano identified himself to Martinez at the gate. I'm Henry Lozano. They knew it was him and Lozano. They knew it was his property and they still wouldn't leave. And they admit that in their interrogatories and admissions. And let me tell you this. They didn't have a basis at all to be there. It violates Florida versus jail. The caller didn't identify criminality. The man with the torch is not criminal. The caller did not give a location. Well, somebody were at my gate at one o'clock in the morning. He's a church torch. I hope my neighbors would call somebody. I mean, OK, well, he he can weld on his own fence without asking questions. Why would the cops waste their time to go out in the middle of the night to somebody welding? Why would they do that? That's the San Antonio Police Department. Six officers entered into Lozano's property. If you look in the video starting at twenty two thirty, they're pulling in. Officer Ortiz is calling in license plates of cars that are within the compound. He's conducting a lawful warrantless search and none of them come back and stolen Lozano's yelling from his porch. Hey, get off my property. You guys have a warrant. Ortiz says, no, but we can get one. It's a little bit too late for that. It's a little bit too late. Let me ask you this. What are your best cases that establish that these were clearly established? In other words, you can't just say, oh, well, you broke the law. That's not enough to to avoid qualified immunity. It needs to be clearly established. Typically, not always, but typically in a case. So what are your best cases on that? Well, let's start with the Supreme Court, Florida versus jail. They didn't have a basis to be there at all. There's no criminality. There's no location. And if you look in the video, they're driving around like a scene from 21 Jump Street. We don't know where we're going. We don't know what we're doing. At minute 20, 15 receives a light, the torch. And he says, oh, maybe that's what the caller saw. The car didn't give a location. So they're blundering around and they get there. Lozano identifies himself immediately on the property owner, you know, Bogart. Ortiz knew him, but they don't leave. My client raises their ire. And a case on point is Alexander versus city of Brown Rock from this circuit. I love that case. It stands for the proposition of a retaliatory arrest, a lack of reasonable suspicion, excessive force and the like. Their personalities conflicted. So he arrested her. You smell at least two reasons. You smell like marijuana. And she gave us a hard time, which are both unlawful. You cannot arrest someone for smelling like a substance. Johnson versus U.S. Supreme Court, 1948. You cannot arrest someone for smelling like marijuana. State versus Steelman, Texas Court of Criminal Appeals, 2002. The highest courts that I deal with state that. That's the law I have to adhere to. There's a case on point or similar. U.S. versus Alacon Gonzalez from the 10th Circuit in 1996. And that's our reply rate. They were staking out a construction site looking for illegal aliens. They thought he had a gun. When they came up to the man, he had a nail gun. But they continued on with their Terry stop. The 10th Circuit said you should have stopped your Terry stop and withdrawn at that point. You didn't have a lawful basis anymore. These guys never had a lawful basis. There's no criminality. There's no. You used your time. You saved time for a battle. May it please the court. Mark Kasanovich on behalf of Jimmy Ortiz and Martha Martinez. Officers are routinely summoned out to calls day and night. But rarely are the calls routine because they all come up with different factual scenarios. This case is no different. Let me ask you this. This is just a hypothetical. If we were to rule against Ortiz, does that mean we also rule against Martinez or are they different in this case? I think they're different because they each were doing different things on the evening in question. And isn't it true that the only thing Martinez did that is accused of being wrong was um going through the car? That's my understanding. And wasn't she told by Ortiz to do that? Yes, I believe he did tell her to instruct her. Okay and she's required to do that? Yes, I mean he was. So if that was improper on his part, does it make it improper on her part? Again, I know you think none of it was improper. I understand you represent them both. But I'm I don't if he had instructed her to do that, I don't think she would have the intent to do anything improper. So she was following his direction. He was a field training officer at the point at that point in time. So if she did, in fact, search the vehicle his direction, that would have been, you know, at his at his direction. Just like if you had somebody else and said, hey, go inside that house because I saw that suspect run in there. The officer who ran in there wouldn't know any difference whether or not the original intent was improper or not. Okay, so let's look at Ortiz. Isn't there some evidence that he arrested her because he was just mad at her for saying she was going to go get the police report and she seemed to be kind of being rude to him? No, I don't really think so because what ended up happening was she turns around and he smells the marijuana on her and he's asking her some very basic questions and he asked her for her ID. And I think then she kind of got a little bit of an attitude with him and said something about going and getting a police report. At that point in time, though, he had smelled the marijuana on her. The other thing that we're summary judgment, she said wasn't using marijuana, didn't smell like marijuana. Isn't that a fact issue? Whether she smelled like marijuana? Yes, but the thing that they did not refute in the summary judgment was he also smelled the marijuana emanating from the vehicle as well, which I don't believe they had refuted in any way and found marijuana in the vehicle. Correct. But this is one of those burning. Yes, that's what Officer Ortiz was at the back of the vehicle and near the vehicle. And she is engaging in suspicious conduct by slamming, closing the door and closing the trunk, etc. So what you have is, I think, an undisputed fact. I don't believe they ever refuted that in the evidence that he smelled it coming from the car and from her, which would have been then led to the next step. At this point, we're really dealing with reasonable suspicion in the detention of her. And I think the magistrate had that correct. We were probably within, I believe I counted like 12 minutes from the time that he actually put her in handcuffs until the time he placed her under arrest. And in the interim, he's still trying to sort out who Lozano is, which Lozano it was, why he was there, what he was doing there. There were a lot of unknowns that were unfolding in that 12 minutes. So I think he acted pretty expeditiously and actually detaining her and then confirming through the search, which the search was constitutional given the fact that they had already built up the fact that they had smelled the marijuana coming from the car and from her. So I think you have a constitutional basis for the progression of the initial stop of her because she did smell like marijuana. He smelled it coming from the car. He detains her, puts her in front of the vehicle. And then at that point in time, they continue on with the investigation and they find the roach inside the car. So you're saying the handcuffing was not the arrest? No, it's the detention. They had detained her until they could obviously get her to the point where she was in front of the vehicle. They went back and tried to determine what Mr. Lozano was. But officers can't just walk up and put handcuffs on everybody they meet, I hope. So there still has to be some reason for that. Even if you are not considering it an arrest, you're just considering it a detention. There still has to be a basis for that. Absolutely, Your Honor. And the thing is, I mean, that happened very early in the process. And as we've said, she denied smoking marijuana or smelling of it. Sure. But as I said, he also smelled it coming from the car. And that's in that brief interaction that he's having with her. I think he could detain her at that point in time and take her in into custody at that point in time and continue on with the investigation. He could have let her go at some point in time within a certain, within a very short amount of time, if that would have been, that they wouldn't have located anything. But obviously, we still have the question mark, where did the smell of the burnt marijuana come from? And it was coming from the car. What time of night was this? I believe the call was dispatched around 1.15 a.m. And there's welding. Well, I think the call originally came in as a disturbance, and then they were filled in with details that there was a person cutting on a fence with some type of a metal cutting device and wearing a mask in the middle of the night. So let me get this straight. Someone welding, cutting on a fence, wearing a mask in the middle of the night. A disturbance had been called in. The cops show up. So it doesn't sound like a normal interaction with citizens. No, and that takes me back to my original comment that routine calls come out all the time, but when they get there, nothing's really ever routine. So you have this evolving situation, and then you have Mr. Lozano, who then kind of goes back behind the fence and makes some comments, oh, we're closing up shop here in the middle of the night. This is not a it's not. It's just simply the facts are not lending itself to that. And then you have Ms. Wood, who then decides that she's going to interject herself into the situation for whatever reason. And she smells like marijuana. There's marijuana smell coming from the car. And then you start to build resources. Was she being compliant with the officer's request even before anything came up with respect to the marijuana? She asked the officer if he wanted to see her ID, and he said yes. She went to get the ID and opened up the trunk. When she's in the trunk, she opened up the trunk. She's rummaging around for the ID, and the officer in the video clearly says to her while she's grabbing her ID, hey, quit rooting around or rummaging around inside that bag. Quit reaching for stuff. So you can tell that at that point in time, his level of awareness with what is going on is not, you know, it's hiding at that point. That's kind of tough, because if your ID is in your purse, you have to rubble around your purse. So I mean, the notion that I need the ID, but don't look in your purse is a little hard. The purse was in the trunk? The purse was or the small handbag or the small wallet was relatively small wallet was in the back of the trunk, but it was inside of another, it appeared to be inside of another bag. And I think the fact that she was. Who opened the trunk? She opened the trunk. And then I think you have, again, Your Honor, I believe I understand your concern is that she's trying to find it, but I think it's taking a little bit longer and she's rooting around a little bit further than normal. Maybe you haven't looked in a purse a lot, but I have. And sometimes your driver's license isn't right where you thought it was. I completely understand that, Your Honor. As if the officer had the right to protect himself and say, you stop looking, step away. Because she could have a gun in there. Absolutely. And I think it was just the fact that it was probably taking a little bit longer than probably what he was comfortable with. But again, I think we wrap that into the whole scenario where it's 115 in the morning. This is very suspicious. He doesn't know what's occurring. And you have an individual who's literally sitting off to the side of this situation in a car. And you have this other gentleman 20, 30, 40 feet away, who's, you really can't determine what's going on here at that point in time. But didn't she do what he said when he said stop looking? I mean, yeah, he can tell her to stop looking, but I'm just saying there was nothing improper about her looking. There was nothing improper about her looking. Like I said, I think it was the actual amount of time that she had spent. And I think at that point in time, Your Honor, if you take a look at the videotape, you'll actually see there were a lot of objects and But she did grab her wallet at that point in time. And then she closed the trunk. If my memory serves me correctly, I believe the trunk was closed at that point in time. And that's when we have the exchange of, you know, well, I'm going to go and get the police report, which we're not criminals. And that's when she says, I'm not a criminal. And that's when the comment comes up, well, you smell like marijuana. Those are all the comments I have. If there are any other further questions, if not, I will bring my time back to the court. We ask that the case be affirmed. May it please the court. My name is Jackie Stroh, and I'm here on behalf of the city of San Antonio. As Mr. Kosanovic just argued, the district court held that there was no underlying constitutional violation. If the court were to affirm on that basis, it would have no option but to also affirm for the city of San Antonio. Because absent an underlying constitutional violation, there can be no liability under Monell. But if we found a constitutional violation but still found qualified immunity, then you all could still be held liable under Monell if you met the other standards, right? There is some case law to that effect, but the district court actually went further beyond holding that there was no underlying violation and the city could not be held liable as a result. The court also held, the district court also held, that there was no evidence of a policy for which the city could be liable under Monell. Oh, I just heard that the city of San Antonio's policies allow officers to arrest anyone for anything without any suspicion that they've committed a crime. Is that true? That's totally false. The policy that he's uses and the provision in question is section E. It says when immediate action is required, so it's qualified first. It's not all encompassing like Wood is saying it is. When immediate action is required, an officer may make an arrest even though he is unable to determine the particular offense which has been committed. Not that no offense has been committed, but he can't recite the statute. Exactly. That's exactly right. It also says there may be a difference in the reason for the arrest and the charge to be filed. An officer is not required to know all legal matters involved in determining with which offenses the offender is to be charged completely in compliance with Supreme Court authority because probable cause is based on objective factors and not subjective factors in what the officer subjectively thought or believed. Well, I can also rely on other officers to tell him things. Well, that's exactly right and that's another reason. I thought that was in the thing you mentioned that the San Antonio PD document. It is and that's addressed in our brief as well. That's another aspect of the policy or the policy, excuse me, I'm sorry, the manual, the SAPD manual that Wood attacks, but it's talking about the collective knowledge doctrine which is totally appropriate under Fifth Circuit and Supreme Court authority. I'd also like to mention, I know I cited it in my brief and discussed it, but when we're talking about the manual itself, Wood didn't plead anything about the manual. She didn't plead any facial challenge about the manual. She didn't talk about the manual at all in her pleading. So, to the extent she's trying now to assert some sort of facial constitutional challenge which would completely fail in any event, she can't do it. I know in her brief she said that Monell has no pleading standard. That's not the law. Monell doesn't have a heightened pleading standard. That's true, but you absolutely have to, under Monell, plead the policy that you're attacking. The only policy she pled were inadequate training, inadequate supervision, and inadequate discipline. As this has to have an inadequacy, so an inadequacy in the training, supervision, or discipline, it has to be causally connected to an actual constitutional violation, and the city had to be deliberately indifferent towards constitutional rights. There is no evidence of any of those elements in this case. The plaintiff could prove deliberate indifference in two different ways. First, a and also sufficient in number to prove a pattern or the single incident exception, which has been used one time by the Fifth Circuit in the Bryan case. The plaintiff has no evidence of any prior constitutional violations, not only by Bryan versus Bryan County? Yes, that's exactly right. That used the single. I thought that was a policymaker who himself ordered. It was like a sheriff who hired his nephew, and the nephew had prior convictions for assault. The sheriff was a policymaker there. I think that might have been right. So it wasn't a single incident case? No, it was a single incident case. I apologize. It was a single incident case. It's the only one in this circuit, and it's completely distinguishable here. There, the deputy had no training at all. The policymaker hired him, right? That's right. But again, the Supreme Court said you can't use single incident, the single incident exception for the hiring decision. The only single incident case I'm aware of is hiring police officers, putting guns in their hands and not training them whatsoever. And that's exactly right. That's another point for the single incident exception and why it doesn't apply here. It's because it only applies in the complete absence of training, complete absence of supervision, complete absence of discipline. We recited in our brief extensively the training that the officers received. They received the TCO training, which under this court's precedent is adequate as a matter of law unless the plaintiff identifies defects in that state training. Wood didn't identify any defects in that state training. We have supervisory provisions. We attach the procedure for disciplinary, the manual for disciplinary procedures. So there is not a complete absence and the plaintiff cannot rely on the single incident exception. And again, because there's no pattern of any prior constitutional violations, so certainly not sufficient in number and certainly not sufficient in specificity, there's no way to prove deliberate indifference through that avenue either. And I will, I'm running out of time, but I will just talk briefly about a couple of the policies. Again, the plaintiff didn't plead the manual as a policy, didn't plead a facial constitutional challenge, but to the extent it's bound up in this inadequate training claim, the court could rely on their tax on the manual either to find an inadequate training supervision or discipline claim. So for example, the plaintiff claims that the manual allows the SAP to freely brandish weapons at citizens no matter the circumstances. Of course, that's not true. That's not at all what the policy or the manual says. It says officers may only brandish a weapon in circumstances where it would be appropriate to use the weapon. Why is, why are we even talking about brandishing a weapon? Was there an allegation that they were brandishing a weapon? That's another point why I don't know. It turned out to be a flashlight as I understand it. Exactly. I don't know why we're talking about that because no one did brandish a weapon. They argue that the manual teaches a bizarre hybrid theory between reasonable suspicion and probable cause. That's not true either. The manual defines probable cause in accordance with Supreme Court precedent and specifically instructs the officers that reasonable suspicion is not probable cause. They, he contends or would contends that the manual allows SAPD officers to effect Terry stops without forming any articulable basis of objective facts. The portion of the manual to which he refers is actually talking about Terry Frist. That didn't happen here either. Not only was a gun not brandished, but she wasn't Frist subject to Terry. She was searched only after she was arrested. But in any event, the way the manual discusses Terry Frist, it's completely in compliance with Terry v. Ohio. And I could go on and on and on, but there is insufficient evidence to find any sort of policy on behalf of the city either under a deliberate indifference standard, inadequate training claim for a pattern or single incident exception for the inadequate supervision claim or the inadequate discipline claim, excuse me. And just briefly, I'd like to touch upon, I can't imagine that the court is persuaded by the argument, but the argument that the district court did not conduct a proper de novo review, the district court recited that it conducted a proper de novo review. And under this court's precedent, the court takes the district court at its word. There is no requirement for this court's precedent for any analysis in the district court's order adopting the report and recommendation of the magistrate. Well, when our standard is de novo, does it even matter? I mean, obviously the district court should do that and I respect that notion. But since we have de novo review, we don't, if the district court didn't do a de novo review, we would still have to do one, right? That's my last argument that I made in the briefing, that it's completely irrelevant because this court conducts a de novo review under the applicable standard of review. My last point that I made in the briefing concerned the admissibility of Craig Miller's affidavit. Craig Miller's affidavit is completely admissible, but the district court didn't even rely on it. So if the court were to find that it were inadmissible, it'd make absolutely no difference because Wood has no evidence to establish any policy against the city of San Antonio. So for all of these reasons, we'd ask the court to affirm the order and judgment of the district court as to the city of San Antonio. Thank you. Is it going to reset? Okay. Yes, Wood did deny using or possessing marijuana in her affidavit and in later conversations with Officer Ortiz. Now, it was an arrest. Look at the admissions and interrogatories on file. They, Ortiz and Martinez, say she was arrested and contraband was allegedly found later, their own words under oath, no less. Officer Martinez says Wood was not a threat and that would eliminate the need to be for handcuffing, as Mr. Kasanovic said. She didn't regard her as a physical threat. Wood was not charged with resisting arrest. If you look through the interrogatories and admissions on file in the excerpts, there's droves of Manila admissions. A case from this circuit, Bishop versus Arcuri, this circuit 2012, the same city of San Antonio, I believe, said in interrogatories and admissions they acted in accordance with their policies. Ortiz and Martinez acted in accordance with their training and policies in their arrest, contact, and search of Wood. That's a Manila admission under this court's precedent, if there is a constitutional violation. It's similar to Russell versus the city of Bridgeport, second circuit 2007. If a city says that the officers acted in accordance with their training and policies, then they're on the hook, if there is a constitutional violation. And let's talk about that. An officer receives qualified immunity. The law wasn't clearly established, but it was according to formal policy. This circuit's number one, it says you don't have to plead the policymaker. That's a matter of law. And number two, this court held the suit against the city could continue on, even though the individual officer had a favorable verdict at trial. It was a bifurcated trial. And the court said that because they didn't put in the verdict. What was their basis? Not that there wasn't a constitutional violation. It could have been qualified immunity. There was. He followed city policy, but the law wasn't clear. So in that case, the city would still be on the hook. Another case we cited was Watson versus the city of Kansas City, 10th Circuit, 1988. That was allowed to proceed and liability was against the city because of the conduct of the officers, according to policy. Hammer versus Gross, 9th Circuit, 1991, pre-Graham versus Connor days, when it wasn't clear whether excessive force or 14th Amendment. The officers followed city policy, even though they received qualified immunity in the city of Newport Beach was on the hook. Now, if you look at the interrogatories and admissions, there's droves. They acted according to their training, 4th Amendment, warless search policies, 4th Amendment, arrest policies, 4th Amendment, Terry stop policies across the board. I counted 81 admissions, 41 admissions and 40 interrogatories, 81 party admissions. This court has always upheld the validity and the conviction and the finality of admissions, particularly when they're conceding elements of claims. Stallard versus U.S., that's a case from this 5th Circuit of 1994. The taxpayer defeated the United States government based upon a single admission. Here's 81. Look at those and look through those. They resound. They acted according to their training. They acted according to their officers. That's how they fly. Look at the video. It's a scene from 21 Jump Street. That's how they're trained. That's their 1400 hours of quality training. They don't know where Terry stop is. They don't know what probable cause is. And the policy we talked about, they can arrest you. OK, I don't I don't know the offense. They'll fill it in later. Back versus Ohio. They'll come up with something. They did come up with something. There's another. Well, there's many policies. I identified 19 policies at summary judgment. In my estimation, five are unlawful on their face. Petrovsky versus city of Houston. You only need one constitutional violation in that case. They've got a Terry stop policy or point zero nine one two. It's not based upon objective facts. It's based upon subjective facts. Harmless factors when taken together can lead a seasoned officer to. It's got nothing to do with criminality. It's got nothing to do with the suspect is armed or dangerous. That's what the Terry principle was founded upon. You've got to identify this person to see if they're armed or dangerous. Not, you know, something doesn't seem right. Brown versus Texas Supreme Court, 1979, police gut hunches and good feelings have no place in the Fourth Amendment analysis or in any court. Their training is flawed. If you can't understand a simple concept is reasonable suspicion. Which they did not. If you can arrest someone and fill it in later, probable cause. If you can affect retaliatory arrests because your personalities clash, Alexander versus city of Round Rock. Yes, I think we have your argument. Thank you. The court will take a brief recess.